[Tagged]

**ORDERED in the Southern District of Florida on December 23, 2010.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                    Chapter 15

BRITISH AMERICAN ISLE OF                  Case No. 10-21627-EPK
VENICE (BVI), LTD.,

      Debtor in a Foreign Proceeding
_____/

### ORDER RECOGNIZING FOREIGN MAIN PROCEEDING

Before the court is the *Verified Petition for Recognition of Foreign Main Proceeding* (DE

2, and with the Petition on Official Form 1 filed at DE 1, the "Petition") filed by Mr. Casey

McDonald ("Petitioner") as Liquidator for British American Isle of Venice (BVI) Ltd. (the

"Debtor").  The Petition and the documents filed therewith constitute a petition under 11 U.S.C.

§ 1504.  Petitioner requests an order of this court pursuant to 11 U.S.C. § 1517 recognizing as a

foreign main proceeding the judicial proceeding relating to liquidation of the Debtor (the "BVI Proceeding") pending in the Eastern Caribbean Supreme Court in the High Court of Justice, British Virgin Islands, Commercial Court (the "BVI Court").  Upon recognition, Petitioner also requests relief under 11 U.S.C. § 1521.  Green Island Holdings, LLC ("Green Island"), a creditor of the Debtor, objects to recognition and the other relief requested in the Petition.  The Court conducted an evidentiary hearing on all relief requested in the Petition on November 16, 2010.  For the reasons set forth below, the court recognizes the BVI Proceeding as a foreign main proceeding.

By order dated October 28, 2009 and filed October 29, 2009, the BVI Court appointed Petitioner as provisional liquidator for the Debtor pursuant to the Insolvency Act of 2003, as amended by the Insolvency (Amendment and Consequential Provisions) Act of 2004, of the British Virgin Islands (as so amended, the "Act").  By order dated February 15, 2010 and filed February 17, 2010, the BVI Court appointed Petitioner as liquidator for the Debtor pursuant to the Act.

The Debtor is an entity formed under the laws of the British Virgin Islands.  The Debtor is a wholly owned subsidiary of British American Insurance Company Limited ("BAICO").  BAICO is the debtor in another chapter 15 case pending before this court.  *See In re British Am. Ins. Co.*, 425 B.R. 884 (Bankr. S.D. Fla. 2010).  The Debtor was formed for the purpose of investing in real estate ventures in the United States.

At the time of the filing of the Petition here, the Debtor's assets comprised a bank account held in the British Virgin Islands and equity interests in British Virgin Islands and United States companies.  As of the petition date, the Debtor owned 100% of the equity interest in four British Virgin Islands entities, Infinity at Brickell (BVI) Ltd., Infinity II (BVI) Ltd., Europa-by-the-Sea

(BVI) Ltd., and C L Isle of Venice (BVI) Ltd., and 100% of the equity interest in three United States entities, Green Island Ventures, LLC, SW Ranches Development, LLC, and Brali Corporation.  These entities, either directly or indirectly through further subsidiaries, owned real estate in the United States.  After the filing of the Petition but prior to the evidentiary hearing, the Petitioner consented to Green Island foreclosing on the Debtor's equity interest in Green Island Ventures, LLC.

In ruling on the Petition, the court must address the requirements of 11 U.S.C. § 1517 and other applicable provisions of chapter 15 in light of the relevant definitions contained in 11 U.S.C. § 101.

Section 1506 provides a public policy exception to matters authorized under chapter 15, including recognition itself.  It states as follows:  "Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.  By requiring the proposed action to be "manifestly" contrary to public policy, Congress makes clear this provision must be interpreted restrictively.  Section 1506 should be invoked only under exceptional circumstances concerning matters of fundamental importance to the United States.  Although few reported decisions address the scope of section 1506, it appears well settled that the exception is to be construed narrowly.  *See In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 567-70 (E.D. Va. 2010) (reviewing decisions to date).

When determining whether to apply section 1506,

courts have focused on two factors:  (1) whether the foreign proceeding was procedurally unfair; and (2) whether the application of foreign law or the recognition of a foreign main proceeding under Chapter 15 would 'severely impinge the value and import' of a U.S. statutory or constitutional right, such that granting comity would 'severely hinder United States bankruptcy courts' abilities to carry out . . . the most fundamental policies and purposes' of these rights.

3

*Id*. at 568-69 (citations omitted).

Green Island argues that the proposed recognition would be manifestly contrary to the public policy of the United States because the Petitioner has a material conflict of interest. The Debtor has only three creditors: BAICO, its parent, with a claim of approximately $234.9 million; Green Island, the objecting party here, with a claim of approximately $45.7 million; and John Yanapolous (or DYL Group, LLC, this is unclear), with a contingent claim of $140 million but potentially a much smaller actual claim. BAICO is by far the Debtor's largest creditor, although Green Island has a significant claim. The Petitioner acts as judicial manager for BAICO in connection with a judicial proceeding in Montserrat and has a fiduciary duty to the creditors of BAICO. In addition, the Petitioner, in his role as liquidator for the Debtor, entered into a confidentiality agreement with BAICO and such confidentiality agreement was not disclosed to the BVI Court. The confidentiality agreement is not in the record here. The purpose of the confidentiality agreement is not clear. Green Island argues that these conflicts of interest are so inherently suspect as to cause this court to question the fairness of the BVI Proceeding, and thus permit this court to deny recognition under section 1506.

The Petitioner argues that his role as judicial manager for BAICO in the Montserrat judicial proceeding is limited, that BAICO is involved in multiple foreign judicial proceedings, and that all of the foreign judicial proceedings affecting BAICO are overseen by Juan M. Lopez who was appointed as judicial manager for BAICO in an action pending in the Bahamas. While Petitioner's argument is consistent with this court's findings in the chapter 15 case involving BAICO, *see In re British American Insurance Co.*, 425 B.R. at 884, it does not negate the fact that the Petitioner owes potentially competing fiduciary duties to BAICO and the Debtor.

4

"Deference to a foreign proceeding should not be afforded in a Chapter 15 proceeding where the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections." *In re Qimonda AG Bankr. Litig.*, 433 B.R. at 570.  The BVI Proceeding is governed by the comprehensive provisions of the Act addressing the liquidation of the Debtor.  As is apparent from the orders appointing the Petitioner and the Act itself, the BVI Court oversees all actions of the Petitioner in the liquidation of the Debtor.  Prior to his appointment the Petitioner disclosed to the BVI Court his role as judicial manager for BAICO in the Montserrat action.  The Act provides Green Island, as a creditor of the Debtor, the opportunity to object to the appointment of the Petitioner or seek his removal.  Green Island did not take advantage of that right.  While the existence of a confidentiality agreement between BAICO and the Petitioner, in his role as liquidator of the Debtor, is troublesome, particularly as such agreement was not disclosed to the BVI Court, it is unclear whether the agreement is material or would require approval by the BVI Court.  In any case, the Act provides Green Island with the right to be heard by the BVI Court on this issue and, again, Green Island did not address its concerns with the BVI Court.  Based on the evidence before the court, there is no reason to believe that procedural fairness is generally lacking in the BVI Proceeding.  In light of the rights accorded to Green Island in the Act, nor does it appear there is a need to adopt additional procedural protections for the benefit of Green Island.

Recognition of the BVI Proceeding will not severely impinge the value and import of a United States statutory or constitutional right in a manner that would severely hinder this court's ability to carry out the most fundamental policies and purposes of such rights.  Again, Green Island points to the conflict of interest represented by the Petitioner's competing fiduciary role on behalf of BAICO, the Debtor's largest creditor.  Green Island cites United States case law

addressing conflicts of interest in the context of cases pending under title 11.  The independence of estate representatives and professionals is indeed an important policy codified in the Bankruptcy Code.  It is likely that a trustee in a United States bankruptcy case, presenting facts similar to those here, would be disqualified from acting on behalf of the estate.  However, "[t]he mere fact of conflict between foreign law and U.S. law, absent other considerations, is insufficient to support the invocation of the public policy exception."  *Id*. (summarizing relevant case law).  As previously noted, Green Island could address this concern with the BVI Court but has failed to do so.  In addition, other provisions of chapter 15, including section 1522, allow this court to tailor relief here so as to protect Green Island's interests in the BVI Proceeding.  The conflict of interest in this case does not rise to the level of severity required to trigger section 1506.

The court must determine whether the BVI Proceeding is a "foreign proceeding" as defined in 11 U.S.C. § 101(23).  This definition contains six requirements.  The proceeding must:

(1)  be collective in nature;

(2)  be judicial or administrative;

(3)  be pending in a foreign country;

(4)  be under a law relating to insolvency or the adjustment of debt;

(5)  subject the assets and affairs of the debtor to the control and supervision of a foreign court; and

(6)  be for the purpose of reorganization or liquidation.

"For a proceeding to be collective within the meaning of section 101(23), it must be instituted for the benefit of creditors generally rather than for a single creditor or class of creditors."  *In re British Am. Ins. Co.*, 425 B.R. at 902.

> [T]he word 'collective' in section 101(23) contemplates both the consideration and eventual treatment of claims of various types of creditors, as well as the possibility that creditors may take part in the foreign action.  Notice to creditors, including general unsecured creditors, may play a role in this analysis.  In determining whether a particular foreign action is collective as contemplated under section 101(23), it is appropriate to consider both the law governing the foreign action and the parameters of the particular proceeding as defined in, for example, orders of a foreign tribunal overseeing the action.

*Id.*

The Act addresses, among other things, the provision of notice to creditors, the presentation and consideration of claims, the right of creditors to take part in the BVI Proceeding, and the distribution of assets to creditors holding approved claims.  All priorities of creditors and equity holders are treated under the Act.  The orders of the BVI Court appointing the Petitioner were entered pursuant to and incorporate the provisions of the Act.  The Petitioner provided notice to all potential claimants of the commencement of the BVI Proceeding and the opportunity to present claims, and the Petitioner noticed and held a creditors' meeting.  Green Island presented a formal claim to the Petitioner, which it later amended twice, and Green Island's counsel attended the creditors' meeting by telephone.

Green Island argues that the Petitioner's conflict of interest, discussed more fully above, is a threat to the collective nature of the BVI Proceeding.  Green Island argues that while the BVI Proceeding is intended to be collective under the provisions of the Act, the fact that the Petitioner owes a fiduciary duty to BAICO, the Debtor's largest creditor, places in doubt whether the Petitioner will act consistent with his fiduciary duty to the Debtor's other creditors including Green Island.

There is no question that the Act provides for the liquidation of the Debtor in a collective manner and that the BVI Proceeding implements the Act.  The orders of the BVI Court are consistent with the requirements of the Act.  There is nothing in the record to suggest that the

BVI Court is unable or unwilling to enforce the provisions of the Act. Under British Virgin Islands law, Green Island may intercede in the BVI Proceeding to protect its interests. In light of the substantive and procedural protections available to Green Island in the BVI Proceeding, the Petitioner's conflict of interest does not constitute a material threat to the collective nature of the BVI Proceeding.

The remaining components of the definition of "foreign proceeding" are easily satisfied here. The BVI Proceeding is a judicial proceeding, instituted by application filed with the BVI Court. It is pending in the British Virgin Islands, a foreign country. The BVI Proceeding is pending under the Act, a law relating to insolvency and the adjustment of debt. The BVI Proceeding and the orders appointing the Petitioner subject the assets and affairs of the Debtor to the control and supervision of the BVI Court. Under the terms of the Act and the orders appointing the Petitioner, the BVI Proceeding is for the purpose of liquidation of the Debtor. The BVI Proceeding is thus a foreign proceeding as defined in section 101(23).

The Petitioner is a person within the meaning of 11 U.S.C. § 101(41), as required by 11 U.S.C. § 1517(a)(2).

The Petition meets the formal requirements of 11 U.S.C. § 1515, as required by 11 U.S.C. § 1517(a)(3). The Petitioner filed the Petition accompanied by evidence of existence of the BVI Proceeding and appointment of Petitioner in the form of certified copies of the orders of the BVI Court appointing him as provisional liquidator and then liquidator for the Debtor. The Petition identified the BVI Proceeding as the only known foreign proceeding with respect to the Debtor.

Petitioner requests recognition of the BVI Proceeding as a foreign main proceeding under 11 U.S.C. § 1517(b)(1). There is no alternative request for recognition as a foreign nonmain proceeding under 11 U.S.C. § 1517(b)(2). A "foreign proceeding shall be recognized . . . as a

foreign main proceeding if it is pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1517(b)(1).

The Bankruptcy Code provides no definition or explicit test for determining a debtor's center of main interest, or "COMI."  Several courts have likened COMI to the "principal place of business" concept under United States law.  *In re British Am. Ins. Co.*, 425 B.R. at 908-09; *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 129 (Bankr. S.D.N.Y. 2007) (citation omitted), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).  More recently, in analyzing COMI courts have drawn a parallel to the "nerve center" analysis described in a United States Supreme Court decision, *Hertz Corp. v Friend*, 130 S. Ct. 1181, 1193-94 (2010). *See, e.g., In re Fairfield Sentry Ltd.,* No. 10-13164 (BRL), 2010 Bankr. LEXIS 3789 (Bankr. S.D.N.Y. July 22, 2010).  This court examined the determination of COMI in depth in a published decision on recognition of foreign proceedings for the Debtor's affiliate, BAICO, and that analysis is incorporated here.  *In re British Am. Ins. Co.*, 425 B.R. at 908-14.

In determining COMI, courts typically consider the following:

(1)  The location of the debtor's headquarters;

(2)  The location of those who actually manage the debtor (which may be the headquarters of a holding company);

(3)  The location of the debtor's primary assets;

(4)  The location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case;

(5)  The jurisdiction whose law would apply to most disputes; and

(6)  The expectations of third parties with regard to the location of a debtor's COMI.

9

*Id.* at 909; *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 128 (citation omitted).  These are not exclusive factors, nor must they all be met in each case.

The Debtor was formed under the laws of the British Virgin Islands and has its registered office in that country.  "In the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c).  In this case, Green Island presented evidence to the contrary that requires weighing by the court, and so the presumption is rebutted.  The Petitioner bears the burden of proof to establish the location of the Debtor's COMI.  *In re British Am. Ins. Co.*, 425 B.R. at 908; *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006).

The court first considers the location of the Debtor's headquarters and the location of those who actually manage the Debtor.  The Debtor has been involved in liquidation proceedings in the British Virgin Islands, under the control of the Petitioner and supervised by the BVI Court, since October 29, 2009.  At the time of the Petitioner's appointment as provisional liquidator, the Debtor had no officers or directors.  For more than a year, the Petitioner has been the Debtor's only manager, the only person authorized to act on behalf of the Debtor.  From the time of his appointment by the BVI Court to the present, the Petitioner has been solely responsible for the day to day management of the Debtor and he has done this consistently, with only limited exceptions not material to this analysis, from his offices in the British Virgin Islands.  The Debtor has only one headquarters, only one nerve center, and it is with the Petitioner in the British Virgin Islands.

As of the filing of the Petition here, the Debtor's assets consisted of a bank account held in the British Virgin Islands and 100% equity ownership interest in seven companies, four registered in the British Virgin Islands and three registered in the United States. The Debtor's equity interest in two British Virgin Islands subsidiaries, CL Isle of Venice (BVI) Ltd. and Europa-by-the-Sea (BVI) Ltd., and the Debtor's cash account in a British Virgin Islands bank, all assets located in the British Virgin Islands, make up more than 80% of the Debtor's total assets.

The Debtor's corporate books and records were maintained with the Debtor's registered agent in the British Virgin Islands and have been in the Petitioner's control in the British Virgin Islands for more than a year. Certain records relating to the United States investments of the Debtor's subsidiaries were maintained by an accounting firm and a law firm in Florida. All of the Debtor's subsidiaries invested in Florida real estate either directly or through other subsidiaries. It is not surprising that the Debtor or its subsidiaries retained professionals in the United States to obtain advice with regard to United States accounting and legal concerns. In any case, to the extent appropriate the Petitioner obtained control of these records shortly after his appointment well over a year ago.

Green Island argues that the Debtor's direct and indirect subsidiaries, the fee owners of real property in Florida, have management here in Florida and that the Debtor is, in effect, managed in Florida. Alternatively, Green Island asks the court to collapse the intervening levels of corporate ownership and, for purposes of determining the Debtor's COMI, treat the Debtor itself as the owner of the underlying real properties.

Green Island's arguments ignore the reality of the Debtor's business operation both before and after appointment of the Petitioner. The Debtor does not own any real estate, in the United States or elsewhere. It does not appear that the Debtor ever owned any real estate directly in its

own name.  Instead, the Debtor's business operation consisted of investing in corporate entities that in turn invested in real estate ventures in the United States.  With three of the Debtor's subsidiaries, Infinity at Brickell (BVI) Ltd., Infinity II (BVI) Ltd., and Europa-by-the-Sea (BVI) Ltd., the real estate was acquired by an even lower tier subsidiary or subsidiaries.  While real property represented the underlying value of its investment, the Debtor elected not to acquire real estate directly.

There is nothing in the record to cause the court to question the sanctity of the corporate structure of the Debtor or its subsidiaries.  There is no suggestion that the Debtor or any of its direct or indirect subsidiaries failed to maintain their corporate form or acted inconsistent with any fiduciary duty.

During the liquidation proceeding, the Debtor caused one of its lower tier subsidiaries to sell real estate in Miami, Florida, and the Petitioner requested authority from the BVI Court to direct the net proceeds from such sale directly to the Debtor's bank account in the British Virgin Islands.  Green Island argues that these facts support piercing the corporate veil and a finding that the Debtor was the real party in interest in the sale of Miami real estate.  This argument is inconsistent with the evidence before the court.  The Petitioner testified that at the time of his appointment as provisional liquidator, the mortgage loan on the subject property was in default and the potential equity available for distribution upstream to the Debtor was dwindling.  The Petitioner caused the bottom tier subsidiary to sell the project, paying claims at that level with the exception of a potential claim of a property manager currently under negotiation, and sought approval from the BVI Court for direct payment of the proceeds into the Debtor's account to preserve value for the Debtor's estate.  One wonders whether failing to take such action might have exposed the net sale proceeds to unforeseen risk and subjected the Petitioner to claims for

12

breach of fiduciary duty.  Put another way, it appears the Petitioner did exactly what this court would have expected had he been a trustee appointed in a case pending here.  Such facts do not support collapsing the Debtor with its subsidiary, for purposes of determining COMI or otherwise.

The court next considers the location of the majority of the Debtor's creditors.  The Petitioner provided notice to all known possible claimants and requested presentation of claims. As of the date of the evidentiary hearing here, the Petitioner was aware of only three claimants: BAICO; John Yanapolous (or DYL Group, LLC, this is unclear); and Green Island.  BAICO is the subject of liquidation and judicial management proceedings in various foreign countries, including the Bahamas, but likely has its principal place of business in Trinidad.  *See In re British Am. Ins. Co.*, 425 B.R. at 911-12.  The Debtor's other two claimants are located in the United States.  Thus, a simple majority of the Debtor's creditors, by number, is found here in the United States.  None of the Debtor's creditors are located in the British Virgin Islands.  On the other hand, although Green Island presented a significant claim to the Petitioner, and John Yanapolous presented an even larger but contingent claim, BAICO is by far the largest claimant in the Debtor's liquidation.  The existence of one very large claim outside both the United States and the British Virgin Islands, and two smaller claims presented by domestic claimants, provides little assistance in the COMI analysis here.  To the extent this factor negates a finding of COMI in the British Virgin Islands, it is outweighed by other evidence supporting such a finding.

The question of what jurisdiction's law would apply to most disputes involving the Debtor also lends little to the COMI analysis here.  While the Debtor is involved in one federal court action with Green Island here in Florida, it appears that much remaining activity in the Debtor's liquidation will focus on the Debtor's relationship with its parent entity, BAICO, which

is also based outside the United States.  It not clear whether the law of the Bahamas, the British

Virgin Islands, or an Eastern Caribbean country will be implicated, but it is unlikely United

States law applies to that aspect of the liquidation.  The remainder of the Debtor's concerns will

be subsumed under the Act, which fully covers the liquidation process in a manner similar to our

Bankruptcy Code.  This factor is not helpful in determining the location of the Debtor's COMI.

Lastly, the court considers the expectations of third parties with regard to the location of

the Debtor's COMI.  In a recent decision, this court suggested:  "There may be instances where a

foreign representative remains in place for an extended period, and relocates all of the primary

business activities of the debtor to his location (or brings business to a halt), thereby causing

creditors and other parties to look to the [foreign representative] as the location of a debtor's

business. This could lead to the conclusion that the center of its main interest has become lodged

with the foreign representative."  *In re British Am. Ins. Co.*, 425 B.R. at 914; *see also In re*

*Fairfield Sentry Ltd.*, No. 10-13164 (BRL), 2010 Bankr. Lexis 3789 (Bankr. S.D.N.Y. July 22,

2010).  The present case is such an instance.

In late October, 2009, the Petitioner took control of the Debtor.  At that time the Debtor

had no formal offices.  It had no officers or directors.  Nearly 14 months ago the Petitioner

became the sole person responsible for the management of the Debtor.  He immediately began to

gather and review the Debtor's books and records and take control of its assets.  He retained

professionals as authorized by the BVI Court.  The Petitioner communicated with professionals

previously retained by the Debtor and its subsidiaries.  He investigated the Debtor's subsidiaries

and visited properties in which those subsidiaries had invested.  The Petitioner caused various

records to be changed to reflect his fiduciary role for the Debtor and the Debtor's management

role in its subsidiaries.  He took action within his power and consistent with his reasonable

business judgment to ensure the safety of the Debtor's investments.  He did not act precipitously, but considered risks in light of advice from his professionals.  The Petitioner sought approval from the BVI Court when appropriate.   Nothing here supports "a finding of an opportunistic shift of the [Debtor's] COMI or any biased activity or motivation to distort factors to establish a COMI in the BVI."  *In re Fairfield Sentry Ltd.*, 2010 Bankr. Lexis 3789, at *13.  In light of the Petitioner's concerted efforts on behalf of the Debtor, and the extended passage of time since his appointment, third parties must necessarily consider the Petitioner's offices in the British Virgin Islands to be the location of the Debtor's COMI.

The Debtor has its center of main interests in the British Virgin Islands.  The Petitioner met his burden in satisfying all requirements for recognition of the BVI Proceeding as a foreign main proceeding.

Accordingly, it is hereby ORDERED that:

1.	The application for recognition of the BVI Proceeding as a foreign main proceeding is GRANTED.  This order constitutes an order of recognition under 11 U.S.C. § 1517.

2.	Petitioner requested relief under 11 U.S.C. § 1521.  The court received evidence on such request at the hearing on November 16, 2010.  The court will conduct a further, non-evidentiary hearing to allow the parties to address such relief in the context of this order.

3.	Pursuant to 11 U.S.C. § 1521(a)(6), the interim relief previously granted under 11 U.S.C. § 1519 will remain in effect subject to order of the court.

###

Copy to:  Leyza F. Blanco, Esq.

Leyza F. Blanco, Esq. is directed to serve a conformed copy of this order on all parties in interest and to file a Certificate of Service attesting to such service.